## UNITED STATES v. FOURTEEN PACKAGES OF WHISKY.

(Circuit Court of Appeals, Fifth Circuit. February 12, 1895.)

No. 261.

INTERNAL REVENUE—SHORTAGE IN PACKAGES OF LIQUORS—REV. ST. § 3289.

Certain packages of whisky were inspected and gauged at the distillery, marks and brands placed thereon by the United States gaugers, and the taxes paid. Upon being regauged, some months later, at another place, it was found that there was a shortage in each package, and that the contents of each package were below the proof indicated by the marks. *Held*, that these facts were no evidence that the United States had been in any manner defrauded, and did not justify the forfeiture of the whisky, under Rev. St. § 3289.

In Error to the District Court of the United States for the Middle District of Alabama.

This was an information claiming forfeiture of 14 packages of whisky, under Rev. St. § 3289. J. B. Lanier filed a claim to the

whisky, and a trial was had in the district court, resulting in a verdict for the claimant. The government brings error. Affirmed.

Henry D. Clayton, for the United States.

T. H. Watts, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge. This is an information and an amended information under section 3289 of the Revised Statutes. The information charges that 14 packages of whisky, seized by the United States internal revenue officer on a claim of forfeiture, did not have on them the proper marks and brands required by the revenue laws of the United States, and that said packages did not have thereon each mark and brand required by law, in that they did not have the marks and brands showing truly the proof of the spirits in said packages, and showing truly the number of wine gallons in each package. One J. B. Lanier answered the information by filing a claim to the whisky, in which he sets up that the marks and stamps on said packages were placed thereon by the proper officer of the United States who gauged the whisky. He denies that said marks and stamps are wrong, and he denies that there were absent from said packages the marks and stamps required by law to be placed thereon. The evidence on the part of the prosecution is that the deputy internal revenue collector for the district of Alabama, finding the whisky in question in the storehouse of one Tatum, in Montgomery, Ala., regauged the several packages thereof on or about the 24th November, 1890; that this regauge by him showed that there were in all the packages a shortage averaging a loss of net wine gallons of about $1^{1}/2$ gallons per package; that the proof marked on each package was "A. P. 100," and that the proof on the regauge averaged from 90 to 95; that the packages contained 5 gallons or more each; that there were marks and brands on the said packages, and that they all bore the rectifier's stamps; that the whisky in the packages did not correspond with the marks and brands thereon, either as to the proof, or as to the quantity contained therein. The packages showed, by proper marks thereon, that they had been inspected and gauged by United States gaugers, in North Carolina, at various dates from March 4, 1890, to July 19th of the same year. This is the substance of the evidence for the plaintiffs. The claimant testified, among other things, as follows: That he resided at Salisbury, N. C., and was a distiller, rectifier, and wholesale liquor dealer; that he had been engaged in business as such since 1866, except about 18 months; that all the packages of whisky sought to be forfeited, and in controversy in this case, had been distilled and rectified at his establishment, which was located near Salisbury, N. C. The witness further stated that, after the rectification of spirits, sugar was put into them for the purpose of mellowing and making them more palatable, and they were then regauged by the proper officer; that the proportion of saccharine matter put in each package of spirits was

about one gallon to each barrel. The witness was allowed by the court, against the objection · of the plaintiffs, to give an ocular demonstration, in the presence of the jury, with spirits, sugar, and hydrometer, for the purpose of showing that the difference in the apparent proof ("A. P.") marked on the packages containing the whisky in controversy and the proof of such whisky as shown by the regauge may have been caused by the sugar which had been put into the spirits by the rectifier, to which action of the court the plaintiffs excepted. The witness also testified that the introduction of sugar into spirits reduces the proof. There was also evidence showing the amount of evaporation allowed in spirits by the regulations of the internal revenue department.

There were various instructions requested by the plaintiffs, which were refused by the court, to which refusal exceptions were duly taken, and on which error is assigned. We will not consider in detail the several rulings of the trial court, and which are presented by ,the assignment of errors. The court could have properly ordered a verdict for the claimant, and we are satisfied of the correctness of the finding on the charge given, the effect of which was to direct a verdict for the claimant. The complaint in the case is that the 14 packages of whisky did not have or bear the proper marks and brands required by law to be placed on them. The law required that such packages should be inspected and gauged on the premises of the rectifier who has paid the tax, by a United States gauger, who should place thereon an engraved stamp, properly signed, and which shall state the date when affixed, and the number of proof gallons contained therein. Rev. St. § 3320. The proof is that the packages in question were duly marked and stamped by United States gaugers on the premises of the claimant, the rectifier, in North Carolina, and that when regauged, some six months thereafter, there was a divergence both in proof gallons and in wine gallons ‘in said packages. The divergence, we think, is clearly accounted for. But, if it were not satisfactorily accounted for, yet we cannot see how the United States has been in any manner defrauded, or could have been defrauded, unless the spirits which had been inspected and gauged in North Carolina had been taken out of the packages, in whole or in part, and other spirits, on which the tax had not been paid, had been put in them. There is, however, no charge of this sort in this information. In no aspect of the case made by the record could the plaintiffs recover. Any error in the rulings of the trial court adverse to the plaintiffs was therefore error without injury. The judgment is affirmed.