## UNION ASSUR. SOC., Ltd., v. UNITED STATES.

### No. 45456.

Court of Claims.

Feb. 1, 1943.

As Modified on Denial of Motion for New Trial May 3, 1943.

Edward S. Coons, Jr., of New York City, for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

This is a suit by a British insurance corporation, other than life or mutual, for refund of income taxes paid for the years 1930, 1931, and 1932. It is based on an alleged error of the Commissioner of Internal Revenue in limiting deductions for

British income taxes paid to an amount not in excess of that resulting from applying the British tax rate to the income of plaintiff from sources within the United States.

The question is whether such a maximum limit of the allowance for deduction is proper under the applicable statute.

Pertinent parts of the statutes and regulations involved are set out in the footnote.[1]

Plaintiff, an insurance company, other than life or mutual, conducts an insurance business in various countries and is affiliated with twenty-two other companies which also engage in insurance business in different parts of the world. The principal office of the group is in London, England.

Plaintiff, for each of the years involved, filed United States income tax returns showing gross income from all sources and gross income from sources within the United States with supporting schedules, from which it computed a net taxable income for each year from sources within the United States. In arriving at the net taxable income, each of the returns reflected a deduction from gross income from sources within the United States for a part of the British income tax paid by the consolidated group. The United States Commissioner of Internal Revenue required that plaintiff file with its returns, in substantiation of its deductions for British income taxes, (1) a schedule of its gross income from all sources, reconciled with its annual financial statement, (2) a statement showing its net income from all sources subject to British income tax, and (3) a schedule of the consolidated assessment, showing the net taxable income or loss of each of the twenty-three companies in the consolidated group of which plaintiff is a member, together with all adjustments producing the consolidated tax liability, and (4) receipts for payment of the consolidated

---

[1] Revenue Act of 1928, c. 852, 45 Stat. 791:

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

\*    \*    \*    \*    \*

"(c) Taxes generally. Taxes paid or accrued within the taxable year, except—

\*    \*    \*    \*    \*

"(2) so much of the income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States as is allowed as a credit against the tax under section 131;

\*    \*    \*    \*    \*

"§ 119. Income from Sources within United States

\*    \*    \*    \*    \*

"(b) Net Income from Sources in United States. From the items of gross income specified in subsection (a) of this section there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto, and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. [Italics supplied.]

\*    \*    \*    \*    \*

"§ 232 [Supplement I]. Deductions

"In the case of a foreign corporation the deductions shall be allowed only if and to the extent that they are connected with income from sources within the United States; and the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in Section 119, under rules and regulations prescribed by the Commissioner with the approval of the Secretary." 26 U.S.C.A. Int.Rev.Acts, pages 356, 391, 418.

Regulations 74, promulgated under the Revenue Act of 1928:

Art. 680. Apportionment of deductions. —From the items specified in articles 671–676 as being derived specifically from sources within the United States there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any other expenses, losses, or deductions which can not definitely be allocated to some item or class of gross income. The remainder shall be included in full as net income from sources within the United States. The ratable part is based upon the ratio of gross income from sources within the United States to the total gross income.

\*    \*    \*    \*    \*

Art. 1111. Deductions allowed foreign corporations.—Foreign corporations are allowed the same deductions from their gross income arising from sources within the United States as are allowed to domestic corporations to the extent that such deductions are connected with such gross income. The proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in section 119 and articles 680–684. As to foreign life insurance companies, see article 977.

assessment. The plaintiff complied with these requirements.

With some adjustments which are not now in controversy, the plaintiff determined its deduction for British income taxes in its United States returns by applying to the total British income taxes paid by it on income from all sources as a member of the consolidated group the percentage which its gross income from sources within the United States bore to its total gross income from all sources, the total British tax paid by plaintiff having been determined by applying to the total tax paid by the consolidated group the percentage which the taxed income of plaintiff bore to the taxed income of the consolidated group. The Commissioner's computation made use of the ratio method followed by plaintiff but in addition placed as a limitation thereon a maximum allowance determined by applying the British income tax rate of 25 percent to plaintiff's actual United States net taxable income without deduction for British income taxes and exclusive of United States income from which British tax was withheld at the source. Our question is whether the limitation applied by the Commissioner was proper.

Apparently the British permit an affiliated group operating in many countries to file a return showing aggregate net gains and losses as one taxpayer. In America while an affiliated group may file a consolidated return, each of the group remains a taxpayer. Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128; Swift & Co. v. United States, 38 F.2d 365, 68 Ct.Cl. 97, 69 Ct.Cl. 171.

It seems proper that some limitation should be placed upon the amount of foreign taxes paid by a member of a consolidated group which that member may deduct from income received from sources within the United States. Otherwise it is conceivable that there might be a considerable income from operations in the United States and yet the aggregate net gains or losses from operations elsewhere be so great that unrestricted deductions applied on a strictly ratable basis might completely offset the United States income so that no tax whatever would be paid on such income. This would present the anomaly of a foreign corporation doing business in the United States and receiving a substantial income (profit) therefrom and yet paying no income tax whatever to the United States.

To prevent such a distortion of American income tax deductions the Commissioner of Internal Revenue, in construing Sections 119 and 232 of the Revenue Acts of 1928 and 1932, 26 U.S.C.A.Int.Rev.Acts, pages 391, 418, 526, 554, adopted what he called a "limitation" on deductions for British income taxes specifying that no deduction may be allowed in excess of the amount of income taxes that would have been actually due had the British rate been applied to income from sources within the United States. In the case at bar the limitation was made use of by applying the British tax rate of 25 percent to the United States income subject to United States tax instead of to the United States income which was subjected to the British tax under the British concept of taxable income. The plaintiff has not attempted to show what variation, if any, existed between the two incomes. In effect, what plaintiff argues is that the deduction should be unreservedly determined on the ratio basis without any limitation.

Plaintiff suggests that the Commissioner of Internal Revenue used a different method for calculating taxes for different years, depending on which one would secure the most money for the Government. This is incorrect. Exactly the same method was used for each of the six years 1928 to 1933 inclusive. For each of those years the ratio method of apportioning deductions was used. The overall British tax rate was used as a limitation for the years when the deductions claimed reached that amount. The British tax rate was applied not as a method but as a limitation. Of course, in any year when the deductions claimed were less than the British tax rate the limitation, though still in force, did not affect the result. The uniform method was used for all the years.

It is as if a dam has a spillway and the parties at interest have a contract that an owner below is entitled to all water that runs over the spillway. The fact that in certain years no water runs over the spillway doesn't alter the agreement. The same agreement prevails in each year even though the spillway is in actual use only in certain years. It is there and in effect for every year, regardless of whether any water actually runs over it.

Likewise here the limitation was made effective for all years even though the claim for deduction reached the level of the spillway or limitation only in certain

years. To use another illustration, it operated in the same fashion as the governor on an engine, which prevents excessive speed without in any way interfering with the uniform principle upon which the engine operates.

Naturally the defendant did not allow as a deduction for any year a greater amount than its proportion of expenses and losses. Only when the claims reached unjust figures did the limitation, though in force at all times, affect the result.

Was the Commissioner justified in applying such a limitation? We think he was. Certainly some limitation should be placed on such deductions. Normally the simple ratio method might accomplish the proper result. But certainly, unless the statute is so worded as to leave him no discretion in the matter, it should not be construed as operating in such a way as to eat up all United States income taxes regardless of the amount of income from operations within the United States.

The statute says:

"§ 119.

\* \* \* \* \* \* \*

"(b) \* \* \* there shall be deducted the expenses, losses, and other deductions *properly* apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income." [Italics supplied.]

The use of the term "properly" would seem to import some discretion and flexibility. The rules and regulations were to be prescribed by the Commissioner of Internal Revenue.

A similar provision to Section 119(b) was first adopted in the Revenue Act of 1921, § 217(d), 42 Stat. 244. The Committee Report accompanying that bill indicated that on account of difficulties in definitely determining some of these matters broad discretion was lodged in the Commissioner of Internal Revenue in determining the proper allocations.

In London & Lancashire Insurance Co. v. Commissioner, 34 B.T.A. 295, page 298, the United States Board of Tax Appeals said:

"The taxes paid to Great Britain by the petitioner on its income were measured by its income from all sources, which included both taxable income from United States sources, as well as tax-exempt income from United States sources and income from sources other than the United States. The United States statute, as we construe it, allows as a deduction in computing net income subject to tax only so much of the British taxes paid by the foreign insurance company as is properly allocable to the taxable gross income from sources in the United States."

See, also, Universal Winding Co. v. Commissioner, 39 B.T.A. 962.

A careful analysis of the opinion in Third Scottish American Trust Co. v. United States, 37 F.Supp. 279, 93 Ct.Cl. 160, which is relied upon by plaintiff, shows that it is inapplicable here. The plaintiff in that case was not an insurance company which is subject to specific statutes. That fact was noted in the opinion. Besides, the question in that case was whether certain items should be wholly included or excluded from consideration in determining the proportion of income received by a British corporation from sources within the United States, and this limitation question was not presented.

The Commissioner has applied the limitation only to foreign insurance companies that are members of consolidated groups, in connection with which it is conceivable that ratable deductions might be as great as the total United States net income.

The limitation is reasonable. It permits a proper allocation of expenses, losses, and other deductions. It permits deductions to the extent of the full British tax rate, and it prevents a complete escape of all taxes on American income which might in some cases arise if unrestricted allocations of all claims and losses that might arise from operations by consolidated groups in many lands were allowed by way of a deduction. To allow in such cases complete escape from taxation even though there were otherwise a substantial United States net income would certainly not be a proper allocation of such expenses and losses.

The petition should be dismissed. It is so ordered.

LITTLETON, Judge, and WHALEY, Chief Justice, concur.

WHITAKER, Judge (dissenting).

I am unable to concur in the majority opinion. The Commissioner of Internal Revenue has authority to make rules and regulations within the general scope of the Act which are addressed to and reasonably

adapted to its enforcement, but he may not extend a statute or modify its meaning. Campbell v. Galeno Chemical Co., 281 U.S. 599, 610, 50 S.Ct. 412, 74 L.Ed. 1063; International Railway Co. v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 66 L.Ed. 341; United States v. 200 Barrels of Whiskey, 95 U.S. 571, 24 L.Ed. 491; Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; St. Louis Refrigerating & Cold Storage Co. v. United States, 43 F.Supp. 476, 95 Ct.Cl. 694, 707. The regulation adopted by the Commissioner, which is quoted in a footnote to the majority opinion, was a valid exercise of the power conferred on him to make regulations, but this regulation was not followed. In assessing these taxes the Commissioner placed a limitation on the deduction not placed by Congress nor provided for in the regulations. Even by regulation the Commissioner could not have denied to the plaintiff a deduction allowed by Congress. Certainly he cannot do so when his own regulations do not prescribe the limitation imposed. Congress has said the plaintiff is entitled to a certain deduction for these taxes; the Commissioner has no power to say the deduction shall be something else.

MADDEN, Judge (dissenting).

The statute, Revenue Act of 1928, Sec. 232 (Supplement I), as quoted in the opinion of the court, says: " * * * the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in section 119, under rules and regulations prescribed by the Commissioner with the approval of the Secretary."

The Section 119 referred to provides that: "* * * there shall be deducted * * * a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. * * *"

Article 680 of Regulations 74, authorized, as we have seen, by Section 232 and quoted in the opinion of the court, provides: "* * * The ratable part is based upon the ratio of gross income from sources within the United States to total gross income."

This regulation, expressly authorized by the statute, was the applicable law, fitting plaintiff's situation quite exactly. For the years 1928, 1929, and 1933 the regulation was applied to plaintiff, and plaintiff's taxes were assessed and collected pursuant to it. For the years involved in this suit, computations were made upon the basis of the regulation, but these computations were not used in assessing plaintiff's tax. Another computation, not mentioned in the statute or the regulation, was applied, viz: the so-called "limitation" by which there was applied to the United States taxable income of plaintiff the British tax rate. Plaintiff was then treated as if it had paid this amount of British tax attributable to its United States income.

The consequence of this departure from the regulation was to reduce plaintiff's allowable deduction from its income, and increase its tax. That this was the only purpose of the departure is shown by the fact that the Commissioner did not depart from the regulation for the years 1928, 1929, and 1933, which he had under consideration at the same time as the years here in question. For those years, the figures were such that adherence to the regulation produced a smaller allowable deduction and a larger tax than departure from it.

The defendant justifies this intermittent, but methodical application or nonapplication of the regulation by pointing out that plaintiff is one of a group of affiliated companies which filed a joint return in Great Britain, and that, somehow, the making of profits or incurring of losses by other affiliates in other parts of the world would have an effect in a situation such as this, which ought to be minimized and which the Commissioner's action sought to minimize. No explanation is given of how this distortion would occur. If it is a real objection to the computation of taxes in accordance with the regulation, it was just as objectionable to plaintiff in the years 1928, 1929, and 1933, when it resulted in his having to pay more taxes, as it was to the Government in 1930, 1931, and 1932, when it would have, if not corrected by the Commissioner, reduced plaintiff's taxes below what he was compelled to pay.

The applicable regulation, which was the law, was the same for the six years. It should have been applied to the three years here in question, when it would have reduced plaintiff's taxes, just as it was applied to the other three years, when it increased them. I would permit plaintiff to recover.