**COMMERCIAL UNION ASSUR. CO., Limited, v. COMMISSIONER OF INTERNAL REVENUE.**

**Nos. 216, 217.**

Circuit Court of Appeals, Second Circuit.

Aug. 24, 1944.

Edward S. Coons, Jr., of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Bernard Chertcoff, Sp. Assts. to Atty. Gen., for respondent.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is a British insurance corporation which does business in various parts of the world including the United States, where it was engaged in business during 1938 and 1939 with its principal office in this country in the City of New York. It was taxable during 1938 on its income from sources within the United States as a foreign insurance company, other than life or mutual, in accordance with the provisions of § 204 of the Revenue Act of 1938, and during 1939 in accordance with the corresponding section of the Internal°Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 204. The two sections are substantially identical, and reference will therefore be made hereafter only to the 1938 Act. The petitioner filed returns of income for each of those years and paid the taxes computed thereon, which it later contended were in excess of the amounts due for each year and filed claims for refunds. The Commissioner determined a deficiency for each of the years, which the Tax Court upheld. 1 T.C. 1166. A petition to review that court's decision was filed here for each year. As both petitions present the same issues for determination, they were consolidated for hearing.

There are three such issues, all relating to allowable deductions from gross income in computing the net American income of the taxpayer for taxation and relating especially to the effect of § 204(e), which provides that "Nothing in this section shall be construed to permit the same item to be twice deducted."

Section 204(a) (1) imposes a tax on what is called the special class net income of the taxpayer, and following subsections show that such special class net income shall be the net income of the corporation from sources within the United States less the sum of (A) the credit granted by § 26(a), 26 U.S.C.A. Int.Rev.Code, § 26(a), for interest on obligations of the United States and its instrumentalities and (B) the credit granted by § 26(b) for dividends received from domestic corporations. The net income from which this amount is to be subtracted to determine its special class net income is the gross income as defined in § 204(b) (1) less deductions allowed in subsection (c). Of the latter items only ordinary and necessary expenses, interest and taxes need now be mentioned.

■ Section 232 of the Act, 26 U.S.C.A. Int.Rev.Code, § 232, provides that a foreign corporation shall be allowed deductions only to the extent that they are connected with income from sources within the United States. The proper apportionment and allocation of the deductions with respect to sources within and without the United States is to be determined as provided in § 119, 26 U.S.C.A. Int.Rev.Code, § 119, under rules and regulations lawfully prescribed. It is in general thus provided that expenses, losses and other deductions which can be definitely allocated to some item or class of what is defined as gross income from sources within the United States may be deducted therefrom and that where there can be no such definite allocation the deductions shall be taken in the ratio which the corporation's gross income from sources within the United States bears to its gross total income.

The first question involves the proper factors which should be given effect in establishing this ratio. The taxpayer's gross income from sources within the United States included tax-free interest on federal obligations and on those of states and their political subdivisions, and dividends paid by domestic corporations, of which 85% was also tax-free to the petitioner. It had operating expenses and had paid British taxes which could not be allocated except by means of the ratio above mentioned. Because § 204(e) forbids a deduction of the same item twice, the petitioner has not been allowed to include in the numerator of the fraction by which the ratio is represented its United States tax-free income though that amount was included in the denominator. The Commissioner decided that this exclusion was made necessary by subsection (e) because under the provisions of § 204 (a) (2) (A) and (B), above quoted, the taxpayer was allowed to deduct this tax-free income in computing its special class net income and so had the benefit of one deduction in that way. In sustaining this view the Tax Court relied on two of its previous decisions, London & Lancashire Insurance Co., Ltd., v. Commissioner of Internal Revenue, 34 B.T.A. 295, and Royal Insurance Co., Ltd., v. Commissioner of Internal Revenue, 38 B.T.A. 955.

The petitioner opposes this conclusion by the argument that § 204(e) only forbids a deduction of "the same item" twice and does not therefore preclude the use of "the same item" once deducted to increase the ratio in which additional deductions, allocable only under the statutory formula, may be taken. It further argues that § 24 (a) (5), 26 U.S.C.A. Int.Rev.Code, § 24(a) (5), is applicable and fixes the only limitation by forbidding the deduction merely of "any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest * * * wholly exempt from the taxes imposed by this title." From that premise it reaches the conclusion that the increase in deductions attributable to the use it has made in the formula of untaxed interest and dividends is not forbidden by subsection (e). Moreover, petitioner insists that the construction put upon subsection (e) by the Tax Court makes it conflict with subsection (d), which provides that "In the case of a foreign corporation the deductions allowed in this section shall be allowed to the extent provided in Supplement I in the case of a foreign corporation engaged in trade or business within the United States or having an office or place of business therein." Yet, if so, subsection (e) is a limitation upon subsection (d).

■■■ Whether or not the petitioner is right in its view that § 24 (a) (5) is applicable, it is wrong as to the effect of § 204 (e), for the two sections are not inconsistent. The former denies any deduction for expenses allocable to income which is received wholly tax-free, while the latter prohibits the taking of the same deduction twice. If by virtue of § 24(a) (5) the petitioner had not been given the benefit of the deduction of the amounts here involved in the computation of its special class net income, there would be some basis, perhaps, for its position. But as we have already seen, it has in fact been given that deduction under § 204(a) (2) (A) and (B). To allow it again would be to permit the same item to be deducted twice within the meaning of subsection (e). To be sure, the two deductions are not exactly the same because what we shall call the first [that allowable under subsection (a) (2) (A) and (B)] frees the entire amount from taxation while that allowable under § 232 frees additional income from taxation only to the extent that the sums first deducted are used to increase the ratio by which this amount of the second deduction is determined. But this difference exists only in the manner of computing the amount of a second deduction on account of the same item. Subsection (e) is general in language and its operation is not confined to the deductions expressly dealt with in the section of which it is a part. It broadly forbids deductions of the same item twice and prohibits the taking of a second deduction attributable in whole or in part to the same item and thus eliminates the possibility of double deductions. What the petitioner seeks authority to do would have the effect of giving it a second partial deduction of items which it had wholly deducted once, and that is what subsection (e) was designed to make impossible. We agree with the Tax Court on this point. Third Scottish American Trust Co., Ltd. v. United States, 93 Ct. Cl. 160, 37 F.Supp. 279, did not touch this provision against double deductions.

■■■ The second question is whether the petitioner may deduct interest paid on debentures it issued to raise the money to buy the stock of three British insurance companies from which it derived no part of its income from sources within the United States. The Tax Court disallowed the deduction on the ground that this income was not "connected with income from sources within the United States" as under §§ 232 and 119(b) it must be to make the deduction allowable. It was, we may assume, interest paid upon a general debt of the taxpayer, to defray which resort could be had to all its property in case of default; but this circumstance does not advance the cause of the petitioner. As has often been said, deductions are a matter of grace and a taxpayer must show that all conditions imposed upon their allowance are fulfilled before he is entitled to them. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. Here the undisputed facts show that the interest paid had no connection at all with income from sources within the United States but on the contrary was connected wholly with income from sources without this country. That fact distinguishes the case on this point from Third Scottish American Trust Co. v. United States, supra.

■■■ The third question is whether the petitioner may take credit for British income taxes it was required to pay on the net profits of three American insurance companies whose stock was wholly owned by it. These taxes are payable by the peti-

tioner under British law regardless of whether the net profits of the subsidiaries actually became its income by means of the receipt of dividends declared or in any other way. They are not, therefore, taxes on the petitioner's income from sources within the United States and are connected with income from sources within this country only in so far as they increase what the petitioner actually has to pay, in the taxable periods when its American subsidiaries have net profits, on account of its investment in their stock, and as they decrease its overall net return by way of dividends whenever the latter are declared and received in amounts sufficient to give it a net return. The decisive question is whether British taxes assessed and paid without regard to the receipt of any dividends by the petitioner are taxes "connected with income from sources within the United States." They are not, of course, in the taxable periods in which the petitioner may have received no income because of its relationship to its American subsidiaries on whose net profits it is compelled to pay a British tax. Even in those taxable periods in which it does receive dividends the 85% of them which is received by it free of American taxes because so much is allowable as a deduction could not be treated as income from sources within the United States with which these British taxes are connected for purposes of deduction. Our above construction of subsection (e) forbids that.

Futhermore there is much to support the decision of the Tax Court that none of the British taxes were connected with income from American sources within the meaning of the statute even in the years in which the petitioner received dividends, as it did in both of the years here involved. This is so because receipt of whatever dividends the petitioner did receive from its American subsidiaries, both the part not taxed by this country and the 15% taxed, had nothing to do either with the imposition of the British taxes or with the amount of them.

They were imposed upon the basis of the net profits of those subsidiaries, and a percentage (fifteen, for instance, since that is what the taxpayer is concerned with here) of the taxes paid would not, except by mere happenstance, have any definite relation to the same percentage of the income, if any, received during the taxable period unless dividends were computed and declared on the basis of net profits—a circumstance most unlikely and not even suggested. Indeed, the contrary appears for in 1938 the net profits of the subsidiaries were $789,-952.91 and the dividends received by the petitioner amounted to $522,881.57; while in 1939 the net profits were only $277,409.-66, yet the petitioner received in that year $522,881.55 in dividends. Obviously, the allowance of a percentage of the British taxes as a deduction based on the percentage of the dividends received by the petitioner free of American income taxes would not therefore reflect the same proportion in each year. As the Tax Court points out, the statute makes no provision for allowing any deduction computed on percentages.

■ Yet this matter of percentage seems to be inherent in the applicable statutory provisions as a whole. In the years when the petitioner receives income from its investment in the stock of these American subsidiaries and also pays British taxes attributable to its ownership of that stock, those taxes inevitably are connected with that part of such income which is to be treated for tax purposes as income from sources within the United States. The latter is the percentage of those dividends on which it is taxable in the United States. Its British taxes so connected to income from sources within the United States may, in our opinion, be deducted to an amount not in excess of the amount of the income with which they are so connected in any taxable period.

The decision is modified in accordance with the above and as so modified is affirmed.